**Bryan Francesconi**
**Assistant Federal Public Defender**
**101 S.W. Main Street, Suite 1700**
**Portland, Oregon  97204**
**(503) 326-2123 Telephone**
**(503) 326-5524 Facsimile**
**Bryan_francesconi@fd.org**

**Attorney for Defendant**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. 3:20-mj-00155 |
| Plaintiff, | **DEFENDANT'S RESPONSE TO THE GOVERNMENT'S MOTION TO REVOKE RELEASE ORDER** |
| v. | |
| **KEVIN BENJAMIN WEIER** | **ORAL ARGUMENT REQUESTED** |
| Defendant. | |

    The defendant, Kevin B. Weier, through counsel, Bryan Francesconi, offers his response to the government's motion to revoke The Honorable Stacie Beckerman's order releasing Mr. Weier.  This Court should reach the same conclusion that both Judge Beckerman and U.S. Pretrial Services reached after considering the same facts.  Under the Bail Reform Act Of 1984, release is favored in all but the rarest circumstances, and the government bears the burden of proving that no combination of conditions will assure the safety of the community or the defendant's appearance at court.  The government has not met that burden in this case as there are substantial conditions in place that will reasonably assure Mr. Weier's appearance and safety of the community.

Page 1    DEFENDANT'S RESPONSE TO THE GOVERNMENT'S MOTION TO REVOKE RELEASE
          ORDER

I.      **Legal Standards.**

The district court reviews the release decision of the magistrate *de novo*. *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990).

A defendant who is confined pending trial suffers a significant loss of liberty implicating the due process clause of the Fifth Amendment and the excessive bail clause of the Eighth Amendment. *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985). "[The] traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction." *Stack v. Boyle*, 342 U.S. 1, 4 (1951). "Unless [the] right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." *Id.* at 4.

The Bail Reform Act mandates release of a person pending trial unless the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The charges in this case do not trigger the rebuttable presumption for detention in 18 U.S.C. § 3142(e)(3)(A) and (B). As a result, the government must convince this court that there is no set of conditions that will "*reasonably assure* the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(g) (emphasis added). Doubts regarding the propriety of release should be resolved in the defendant's favor. *Motamedi*, 767 F.2d at 1405. *Id.* (citations omitted). Tipping the balance in favor of the defendant derives from "the presumption of innocence and its corollary that the right to bail should be denied for only the strongest reasons." *Id.* at 1407.

A finding that a defendant is a danger to any other person or the community must be supported by "clear and convincing evidence." 18 U.S.C. § 3142(f)(2)(B). With respect to the

risk of nonappearance, the government's burden is a *clear preponderance* of the evidence. *Motamedi*, 767 F.2d at 1306. "The Ninth Circuit's 'preponderance of the evidence' standard in pretrial detention matters is more than the usual 'tips the scales slightly' test applied in civil cases." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992). "Section 3142 does not seek ironclad guarantees, and the requirement that the conditions of release 'reasonably assure' a defendant's appearance cannot be read to require guarantees against flight." *Id*.

## II.     Alleged Conduct Factual Background [1]

Mr. Weier is charged by criminal complaint with one count of attempted arson of a federal building, in violation of 18 U.S.C. §§ 844(f)(1).  Due to the ongoing civil rights-based protests that are currently occurring on a nightly basis in front of the Multnomah County Detention Center (MCDC) and the Mark O. Hatfield United States Federal Courthouse (the Hatfield Courthouse), Mr. Weier was arrested on the evening of July 13, 2020 at approximately 1:00 a.m.  As the Court is aware, these protests are part of a national movement intended to address systemic and racial injustice within law enforcement and the criminal justice system in the aftermath of the killing of George Floyd.  *See e.g.* Derrick Bryson Taylor, *George Floyd Protests: A Timeline,* NY TIMES (July 10, 2020) https://www.nytimes.com/article/george-floyd-protests-timeline.html.  While these protests have had some unfortunate results and impacts, the overall view among the public remains overwhelmingly positive, reflecting the important social work the protestors are engaging in on a nightly basis.  *See e.g.* Larry Buchanan, Quoctrung Bui, and Jugal K. Patel, *Black Lives Matter May Be The Largest Movement In U.S. History*, NY Times (July 3, 2020) https://www.nytimes.com/interactive/2020/07/03/us/george-floyd-protests-crowd-size.html.  On

---

[1] Except where expressly stated, the facts contained in this recitation are taken from the criminal complaint filed in this matter. In noting these facts, the defense does not stipulate to or concede their truth.

Page 3   DEFENDANT'S RESPONSE TO THE GOVERNMENT'S MOTION TO REVOKE RELEASE
        ORDER

the morning of July 13, 2020, Mr. Weier was protesting in front of the Hatfield Courthouse, along with approximately 250 of his fellow citizens, for ostensibly forthright and noble reasons.

Unfortunately, the events of July 13, 2020 also lead to Mr. Weier's arrest. It is important to note that Mr. Weier has been not been provided with discovery other than that contained within the criminal complaint. According to affidavit of Senior Special Agent Micah Coring of the Federal Protective Service that accompanied the criminal complaint, at approximately 1:15 a.m., 25 to 50 unidentified protestors started a fire in the middle of a pedestrian crosswalk near the Hatfield Courthouse. Watching protestors on a livestream YouTube channel,[2] law enforcement saw someone other than Mr. Weier take a flaming piece of wood from the fire and place it near the wood-covered western façade of the Hatfield Courthouse. After the unidentified protestor placed the wood and walked away, Mr. Weier "walked up to the flaming piece of wood and tried to wedge it up against the wood covering the exterior of the courthouse." Criminal Complaint at 8. After doing so, Mr. Weier walked away from the façade. A few minutes later, other protestors approached the burning piece of wood and removed it. *Id*. After being advised of his *Miranda* rights, Mr. Weier agreed he was on scene but denied placing the burning wood there or having touched the wood.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[2] A link to a YouTube video was provided in Agent Coring's affidavit. However, it does not appear to provide the relevant video.

Page 4   DEFENDANT'S RESPONSE TO THE GOVERNMENT'S MOTION TO REVOKE RELEASE ORDER

**III.    Argument.**

    **A.    The Statutory Factors That Must Be Considered In Deciding Whether A Person Should Be Released Pending Trial Weigh In Favor Of Releasing Mr. Weier.**

In evaluating whether a defendant should be released, the court considers the following statutory factors:

(1) the nature and circumstances of the offense charged […];

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including--

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

    **B.    The Nature And Circumstances Of The Offense And The Weight Of The Evidence.**

Rather than focusing on the conditions in Mr. Weier's life, which demonstrate that he should be released, as Judge Beckerman and U.S. Pretrial both recognized, the government often relies upon stark descriptions of pitched battles occurring outside the Hatfield Courthouse as the basis to justify Mr. Weier's continued detention.  *See e.g.* ECF 5 at 2 ("Officers and agents have been pelted with rocks, frozen water bottles, commercial grade fireworks, and the like.  Protestors have targeted their eyes with high-powered laser pointers.  Fires have been set outside the courthouse, and fireworks have been through into the lobby through broken windows.").  However,

when one examines the actual circumstances of Mr. Weier's life, and the conditions the Court can place on Mr. Weier while on release, it is clear that Mr. Weier can and should be released.

Acts of vandalism and violence do not define the nightly protests currently occurring throughout Portland and they similarly do not define Mr. Weier. Mr. Weier was participating in the protests on July 13, 2020, as almost all individuals are, for laudable reasons. The Government alleges that during one of these lawful protests, Mr. Weier made a serious mistake when he failed to remove, and affirmatively repositioned, a piece of smoldering wood already leaning against a temporary façade. Mr. Weier contests this summarized version of events and requests a copy of the video. Even taking the government's theory at its word, Mr. Weier did not create the fire nor was he the individual that originally placed the burning wood against the façade. Rather, Mr. Weier is alleged to have repositioned an already burning plank by a few inches or a few feet. When presented with a hazardous situation not of his making, the Government alleges Mr. Weier made the situation *potentially* worse and definitely did not make it better. However, he also did not *actually* make the situation worse. The board was soon thereafter removed and the façade neither burned nor even appears to have been charred. Such a mistake by Mr. Weier, if it actually occurred as the Government alleges, can be reasonably described as a momentary lapse in judgment lacking in true foresight and planning. After all, if Mr. Weier had actually wanted to commit an arson upon federal property, it is reasonable to assume he should have been the person to place the flaming board adjacent to the building. Likewise, if arson were Mr. Weier's true intent, why didn't he place it there again after it was removed? The reality is that even under the government's theory, Mr. Weier's conduct lacks the kind of malice and forethought that is often associated with federally prosecuted criminal conduct.

Furthermore, the Ninth Circuit has cautioned that at a review of detention hearing, "the weight of the evidence is the least important of the various factors." *Motamedi*, 767 F.2d at 1408. If the court unduly emphasizes the weight of the evidence, the risk exists that the Court will "impermissibly make[] a preliminary determination of guilt," such that "the refusal to grant release could become in substance a matter of punishment." *Id*. Thus, "evidence of guilt is relevant only in terms of the likelihood that the person will fail to appear or will pose a danger to the community." *United States v. Ward*, 63 F. Supp. 2d 1203, 1208 (C.D. Cal. 1999).

      **C.**    **Mr. Weier's History, Characteristics And Criminal History.**

Mr. Weier is a 34-year old United States citizen. Presentence Report at 1. Mr. Weier moved to Oregon in January 2020 and currently resides in Eugene. *Id*. Pretrial Services was able to confirm Mr. Weier's current residence through a roommate. Prior to moving to Oregon, Mr. Weier lived and worked in California for approximately five years as a freelance stagehand for Golden Voice and other music-related companies. *Id*. at 2. Those jobs meant he was often on the move. *Id*. While the government argues that this work history demonstrates an "itinerant lifestyle," the reality is that Mr. Weier was employed within a profession that required constant travel. Thereafter, from February to June of this year, Mr. Weier was employed with a restaurant chain. Due to the nationwide pandemic, Mr. Weier was furloughed for a time. When called back in June, Mr. Weier eventually made the decision to quit rather then work in a place he deemed lacking necessary pandemic mitigation preparations. As Mr. Weier ultimately quit, he does not qualify for unemployment compensation. Rather, Mr. Weier is currently surviving on food stamps as he seeks new employment opportunities.

Mr. Weier acknowledges having only moved to Oregon in January and lacking local familial ties. However, this factor alone should not result in his detention. Mr. Weier was

employed until recently, has a stable residence, and is surrounded by supportive friends. Mr. Weier is on the Oregon Health Plan, something that is very important to him. In 2013, Mr. Weier was involved in a serious car accident that broke his jaw and fractured a number of his teeth. Since moving to Oregon and obtaining insurance, Mr. Weier has been able to obtain true medical care and is finally addressing his still relatively serious medical situation. Mr. Weier does not own a passport and has not traveled outside the United States.

According to Pretrial Services, the only crime Mr. Weier has been convicted of is a 2012 conviction for misdemeanor theft.[3] Mr. Weier received 12 days of jail and 36 months of probation on that charge. Mr. Weier was also charged with "failure to appear after written promise," likely meaning a cite-in-lieu. However, that charge was dismissed at the time of his plea on the theft. It should be noted that the incident date on both charges was May 26, 2012 and his plea and sentencing occurred five days later on May 31, 2012. Given the short turnaround, it is hard to determine based upon the current record whether the failure to appear was willful.[4] If it was, it was remedied within days. Mr. Weier has no criminal history involving violent conduct. Mr. Weier was not on supervision for any crime at the time of the events of the current case. Moreover, the events of the current charge, when evaluated in context, do not involve any true acts of violence.

/ / /

/ / /

/ / /

---

[3] As of filing, it is unclear if Mr. Weier was convicted of vandalism in 2005. He was likely a juvenile at the time.

[4] It is counsel's anecdotal experience that individuals often miss initial cite-in-lieu arraignments due to logistical confusion.

## CONCLUSION

Mr. Weier is charged by criminal complaint with a crime that carries a presumption of release. The government cannot meet its burden of proving by clear and convincing evidence that no condition or combination of conditions exists that can assure the safety of the community nor that he will not appear for court. Accordingly, the Court should release Mr. Weier subject to the least restrictive combination of conditions that the Court deems necessary. 18 U.S.C. § 3142(c)(1)(B). United States Pretrial Services is more than sufficiently resourced to supervise Mr. Weier adequately and effectively out of its Eugene office.

RESPECTFULLY submitted this 15th day of July, 2020.

*/s/ Bryan Francesconi*
Bryan Francesconi
Assistant Federal Public Defender